UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SERGE FUEKANG NGAH, Petitioner, | ) | |
| v. | ) | Civil No. 26-11025-LTS |
| ANTONE MONIZ et al., Respondents. | ) | |

MEMORANDUM AND ORDER ON
MOTION FOR ATTORNEYS' FEES (DOC. NO. 13)

September 10, 2026

SOROKIN, J.

Serge Fuekang Ngah, the petitioner in this habeas action, seeks an award of attorneys' fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. Doc. No. 13. The respondents have asked the Court to defer ruling on the motion and, alternatively, have opposed it. Doc. No. 14. Ngah has replied. Doc. No. 15. For the reasons that follow the motion is ALLOWED IN PART.

I. BACKGROUND

Ngah came to the United States from Cameroon in July 2022. Doc. No. 1 ¶¶ 1–2. He was paroled into the country then and, in January 2023, applied for asylum and other forms of relief from removal. Id. ¶ 3. He was authorized to work and was subject to ongoing supervision by ICE. Id. ¶¶ 3–4. He is married to a United States citizen, and together they have a twelve-year-old son who is also a United States citizen. Id. ¶¶ 3, 37. The family moved to Massachusetts in 2025. Id. ¶ 3. His wife has a pending petition seeking a family-member visa for Ngah which, if granted, would provide him a pathway to permanent residency. Id. ¶ 36.

On January 20, 2026, ICE arrested Ngah and detained him. Id. ¶ 38. Through counsel—a supervising lawyer and law students with Harvard's Immigration and Refugee Clinic—Ngah filed a petition on February 27, 2026, challenging his detention without a bond hearing. See Doc. No. 1. The petition was twelve pages long. Id. Its filing triggered a series of events that had, by that point, become commonplace in this Court in cases such as this one: a standard service order issued setting a March 4 answer deadline and prohibiting Ngah's transfer out of Massachusetts or removal from the United States absent prior written notice, Doc. No. 4; an Assistant United States Attorney entered her appearance, Doc. No. 6; and the respondents timely answered the petition with an abbreviated memorandum that conceded Ngah's claim was similar to those presented by other petitioners this Court had granted relief, and that "the same result" would apply here if the Court adhered to its reasoning, Doc. No. 7.[1]

After reviewing the parties' submissions, the Court allowed the petition on March 3, 2026. Doc. No. 8. As relief, the Court ordered the respondents to release Ngah by March 10, 2026, "unless he [was] provided a bond hearing under 8 U.S.C. [§] 1226(a) before that time" which comported with governing First Circuit precedent concerning the burdens of proof that are constitutionally required at such a hearing. Id. The Court required the respondents to file a report by March 12 confirming their compliance. Id. In their status report filed a day early, the respondents notified the Court that Ngah had been provided a bond hearing on March 10, and that the presiding immigration judge ("IJ") had denied bond upon finding that Ngah presented "a danger to the community, by clear and convincing evidence, based on his recent arrest for domestic assault and battery on a family/household member and violation of an abuse prevention order." Doc. No. 9 at 1. Ngah took no steps in this Court to challenge the adequacy of his bond

[1] In fact, the respondents filed their answer two days early, on March 2.

hearing or the IJ's decision, and the Court entered Judgment on March 17, 2026. Doc. No. 10. The respondents did not appeal. As far as the Court is aware, Ngah remains in custody now.

On July 10, 2026, with the Court having extended the relevant deadline and set a briefing schedule at the parties' request, Ngah filed the motion now pending, seeking "a fee award in an amount no less than $9,082.50" plus $149.97 in costs. Doc. No. 13 at 1. The motion was supported by the following exhibits: a copy of this Court's March 27, 2026, Order in Canel Ajbal v. Wesling, No. 26-cv-10190; a copy of this Court's September 5, 2025, Order in Encarnacion v. Moniz, No. 25-cv-12237; a copy of this Court's July 14, 2026, Order in Garcia v. Hyde, No. 25-cv-11513; a one-page declaration by Ngah concerning his net worth and his assignment of any fee award to counsel; a six-page declaration by lead counsel and clinical professor Sabrineh Ardalan concerning the rate and hours comprising the award sought; a copy of Ardalan's resume; time charts for Ardalan and two law students who had worked with her on this case; and a receipt for the cost of a virtual meeting with Ngah. Doc. No. 13-1. In all, Ngah's motion spanned eighteen pages, with forty-seven pages of exhibits.

The respondents timely opposed the motion. Doc. No. 14. In their five-page filing, they succinctly advanced a trio of alternative arguments: first, they asked the Court to defer ruling until the Supreme Court issues a decision in the coming term resolving whether immigration habeas proceedings are "civil actions" within the meaning of the EAJA; next, they incorporated legal arguments they advanced in Canel Ajbal; and finally, acknowledging that the Court previously rejected those arguments, they urged that any fee award should be decreased because the hourly rates requested by Ngah's counsel here are "exorbitant" and "unjustified." Id. at 2.

Ngah responded with a five-page reply brief accompanied by forty-one more pages of exhibits. Doc. Nos. 15, 15-1. Some of the exhibits are copies of documents already included in

support of the original motion. E.g., Doc. No. 15-1 at 3–12 (another copy of Canel Ajbal decision); id. at 24–29 (another copy of Ardalan's resume). The exhibits also include: a copy of a five-page Order by a New Jersey District Judge awarding an immigration habeas petitioner EAJA fees; a four-page supplemental declaration by Ardalan that, among other things, describes the hours worked on the fee motion and reply; declarations by two other immigration lawyers with practices in the Boston area opining about prevailing market rates; and supplemental time charts for Ardalan, a paralegal, and a law student. Id. at 13–23, 30–41. The Court will further describe the content of Ngah's exhibits in the discussion that follows.

## II. LEGAL STANDARDS

Pursuant to the EAJA:

> [A] court shall award to a prevailing party . . . fees and other expenses . . . incurred by that party in any civil action . . . brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). The same statute goes on to specify:

> A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application which shows . . . the amount sought, including an itemized statement from any attorney . . . representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed.

§ 2412(d)(1)(B); see also § 2412(d)(2)(A) (defining "fees and other expenses" to include "reasonable attorney fees").

Only because Congress has chosen to allow reimbursement of "reasonable attorneys' fees" in cases falling within the EAJA's purview can this Court entertain a request like Ngah's in the first instance. See Atl. Fish Spotters Ass'n v. Daley, 205 F.3d 488, 493 (1st Cir. 2000). The statute provides an exception to the general rule that "each party is . . . required to bear its own attorneys' fees." Castañeda-Castillo v. Holder, 723 F.3d 48, 56 (1st Cir. 2013). It is "strictly

construed in favor of the government," because "it effectively amounts to a partial waiver of sovereign immunity by the United States." Id. at 57.

The EAJA contains language expressly limiting the hourly rate a Court may award:

> The amount of fees awarded . . . shall be based upon prevailing market rates for the kind and quality of the services furnished, except that . . . attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A). The First Circuit has emphasized that this statutory rate cap, which reflects Congress's choice regarding "the level of generosity" generally permitted by the EAJA, "is designed to hold down the government's costs by providing modest compensation" to a prevailing party's counsel. Atl. Fish Spotters, 205 F.3d at 491, 493.

There are two primary exceptions to the statutory rate that are pertinent here. First, the statutory rate may be exceeded to account for cost-of-living increases tied to the relevant legal market—a point the respondents concede. See Doc. No. 14 at 3–4. This calculation is often performed using Consumer Price Index data for the relevant metropolitan area and time period. See Doc. No. 13 at 15 n.6 (describing such rates and citing cases); see also Castañeda-Castillo, 723 F.3d at 76–77 (approving use of such rates). Second, a higher rate may apply where the moving party supplies "at least modest support" for a finding that "as a practical matter the plaintiffs would be unable to find" a lawyer with the relevant subject-matter expertise "for $125 (assuming arguendo that one was required)." Atl. Fish Spotters, 205 F.3d at 493. This exception does not permit "extra compensation by 'fields' but by asking the practical question whether in the case at hand lawyers qualified to handle the case can be found for $125 or less." Id. at 492. Even where a lawsuit involves a specialized area of law, the exception does not apply if "an otherwise competent lawyer can . . . learn enough about the particular controversy to litigate in

the area adequately," considering the specific circumstances of the case, by "deploy[ing] exactly the skills taught in law schools." Id.

## III. DISCUSSION

The Court will address each of the respondents' three challenges to Ngah's motion in turn and explain why only the third—urging a reduction of the amount sought—succeeds.

Preliminarily, the Court declines the respondents' invitation to stay or defer action on this motion pending a potential decision by the Supreme Court that may address the meaning of pertinent statutory language. Besides citing the pending Supreme Court matter itself, the respondents cite no authority to support this request, nor do they articulate a reasoned basis for it (such as by otherwise addressing the factors ordinarily governing requests for stays pending appeal). Contrast Doc. No. 14 at 1–2 (summarily proposing stay), with Doc. No. 15 at 1–3 (advancing reasoned legal argument opposing stay). By raising this issue in only "a perfunctory manner, unaccompanied by some effort at developed argumentation," the respondents have waived it. United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Thus, the Court proceeds to resolve the motion.

As far as the requirements for an EAJA award are concerned, the respondents concede that this case is analogous to Canel Ajbal, in which this Court explained why an EAJA award was likely warranted.[2] See Doc. No. 14 at 1–2 & n.1. The Court continues to adhere to the

[2] Ngah notes that the respondents, by incorporating their briefing from Canel Ajbal, "do not contest" certain prerequisites to an award, such as whether this case is a "civil action" and whether the respondents' position was "substantially justified." Doc. No. 15 at 1 n.2. This is only partly right. Canel Ajbal featured briefing by the respondents urging that their detention of the petitioner without access to a bond hearing was lawful (and, thus, justified). See Order at 6–10, No. 26-cv-10190-LTS (D. Mass. Mar. 27, 2026), ECF No. 27 (addressing and rejecting respondents' arguments in this regard and finding position not substantially justified). That case, however, did not include briefing or argument by the respondents concerning the "civil action" requirement. The respondents here have offered to submit "further briefing on any issue [they] did not address" in that case. Doc. No. 14 at 1 n.1. The Court finds on this basis that they have

reasoning it articulated in that case, as it did when resolving several other more recent EAJA motions. See, e.g., Peruano v. Wesling, No. 26-cv-10300-LTS, 2026 WL 1413758, at *12–13 (D. Mass. May 20, 2026); Order, Ribeiro v. Wesling, No. 25-cv-13887-LTS (D. Mass. June 5, 2026), ECF No. 22; Order, Lopes v. Hyde, No. 25-cv-14017-LTS (D. Mass. June 5, 2026), ECF No. 17; Order, Mijango Velasco v. Wesling, No. 26-cv-11355-LTS (D. Mass. July 7 2027), ECF No. 24; see also, e.g., Ndongala v. Wesling, No. 26-cv-10194-ADB, 2026 WL 1534981, at *1 (D. Mass. June 1, 2026); Orrego v. Hyde, No. 26-cv-10260-BEM, 2026 WL 1480362, at *1 (D. Mass. May 27, 2026). Ngah is entitled to an EAJA award here, just as the petitioners in those cases were so entitled.

One question remains: What is the appropriate amount of the award? As to this, the Court has substantial discretion. See Michel v. Mayorkas, 68 F.4th 74, 80–81 (1st Cir. 2023). Here, after reviewing the record in this case including all of Ngah's exhibits in support of his motion, the Court concludes that the sum Ngah requests is patently unreasonable. The Court addresses the hourly rate first, then the hours claimed.

A. Reasonable Hourly Rate

Ngah urges the Court to compensate his counsel using the following hourly rates: For Ardalan (a lawyer with approximately twenty-three years of experience), he seeks $1,227 per hour; for the law students and paralegal who assisted her, Ngah seeks $277 per hour. See Doc. No. 13 at 15. These rates are facially excessive,[3] and Ngah has not supplied even "modest

---

not waived the "civil action" argument, but it also finds no further briefing is necessary because it has received and reviewed (and rejected) the respondents' argument on this issue in various other recent cases in which similar motions have been filed.

[3] The Court makes this observation based on its recent experience evaluating similar requests in other immigration habeas cases. In no other case has any lawyer sought even remotely comparable rates from this Court. In fact, the rate sought for the law students and paralegal here exceed not only the rates sought by other non-attorney legal professionals, but also those claimed by most other practicing lawyers making similar requests to this Court in similar contexts. See,

support" for them. Atl. Fish Spotters, 205 F.3d at 493. The only basis identified for either rate is the Laffey Matrix—"a scale of hourly rates based on experience prepared by the U.S. Attorney's Office for the District of Columbia." Doc. No. 13 at 13. According to Ngah, the rates reflected in that Matrix "are more than reasonable." Doc. No. 13 at 15. The Court disagrees.

Ngah's papers gloss over the fact that the Matrix estimates prevailing rates in the District of Columbia (not Boston), and neglect to mention that multiple District Judges in Massachusetts have rejected the Matrix as a means of establishing market rates for lawyers practicing here. See EEOC v. AutoZone, Inc., 934 F. Supp. 2d 342, 358 n.16 (D. Mass. 2013) (Young, J.) (noting "many" courts "have cast doubt on the utility of the [Matrix] outside of the District of Columbia and have rejected its extension to other communities," observing "federal judges in and around Boston have . . . often award[ed] fees based on rates well below those prescribed in the" Matrix, and citing cases); see also Mem. of Decision at 4 n.1, Orellana-Serrano v. Hyde, No. 25-cv-12646 (D. Mass. Aug. 21, 2026), ECF No. 30 (Joun, J.) (rejecting "reliance on" Matrix because it is "generally not used in this district"); Sullivan v. Experian Info. Sols., Inc., No. 16-cv-11719, 2022 WL 392848, at *9 n.24 (D. Mass. Feb. 9, 2022) (Kelley, M.J.) (same). This Court follows suit and finds the Matrix supplies no meaningful support for the rates Ngah seeks.

For the law students and the paralegal, Ngah relies almost entirely on the Matrix.[4] He does not offer evidence showing the level of experience or special expertise of the law students

---

e.g., Mem. & Order at 6, Tuzolana v. Hyde, No. 26-cv-10259 (D. Mass. June 25, 2026), ECF No. 20 (overruling objection to $150 hourly rate sought for law clerk), appeal filed, No. 26-1959 (1st Cir. Aug. 21, 2026).

[4] He also includes a citation to one case from Washington in which a slightly lower rate was awarded for a paralegal's work because that court found the rate had been generally "unchallenged by the government" in that jurisdiction. Doc. No. 15 at 4–5. The Court assigns that authority no weight, including because the government here does challenge the rate. Also, to the extent Ngah suggests in the alternative that the students and paralegal are entitled to the same cost-of-living-adjusted EAJA rate as an attorney, he cites no case so holding, and the Court

or the paralegal, nor does he engage with other cases in this jurisdiction where substantially lower rates were awarded (including by this Court). The Court finds here, as it did in another recent case, see supra note 3, that $150 is a reasonable hourly rate for the work of the paralegal. Following the lead of Judge Joun, who recently resolved similar motions by petitioners represented by the same Harvard clinic, the Court finds that $75 is a reasonable hourly rate for the work of the law students. E.g., Mem. of Decision at 5, Orellana-Serrano, supra.

For Ardalan, with the Matrix rate eliminated, the Court considers the remaining evidence bearing on an appropriate hourly rate. In her first declaration, Ardalan opined that "private attorneys" with "the ability and expertise to litigate" federal habeas actions "cannot be obtained at the EAJA statutory rate" and "often charge approximately $500 per hour or more." Doc. No. 13-1 at 31. Ngah's reply and the supporting materials emphasized the "or more," citing $650 as "the standard . . . rate for Boston area immigration attorneys." Doc. No. 15 at 5; see Doc. No. 15-1 at 20, 22, 33, 37 (relying on declarations from two attorneys with about fifteen years more experience than Ardalan, one of whom charges $500 per hour but "believe[s]" his rate "is below the market"). The Court declines to award Ardalan an enhanced hourly rate on the basis of these declarations. Even if the declarations were viewed as establishing the prevailing market rate for a lawyer of Ardalan's experience—a generous assumption, as her declaration only minimally identifies the basis for her opinion regarding the market rate, and the two other declarants have considerably more experience than Ardalan does—the Court finds that the circumstances of this particular case do not warrant awarding fees at a rate higher than the EAJA rate (adjusted for the cost of living).

---

rejects that position for reasons so obvious that they need not be explained in detail. Licensed attorneys and students/paralegals generally are not compensated equally.

As noted earlier, it is not enough that the case involved a specialized area of law. See Atl. Fish Spotters, 205 F.3d at 492. By the time this petition was filed, the state of the law in the District of Massachusetts governing immigration detention of a person in Ngah's position was something that a generally "competent lawyer" could ascertain. Id. Nothing about his petition, or how its litigation unfolded in this Court, required his counsel to do more than "deploy exactly the skills taught in law schools." Id. His twelve-page petition was straightforward. The Court responded as it generally does in such cases, staying his transfer or removal and requiring a prompt response. The respondents answered as they often do, in an abbreviated response barely more than a page in length. And, without further action by Ngah's counsel, the Court allowed the petition and required that he be provided a bond hearing. Accordingly, this Court finds no basis besides the cost of living to exceed the statutory rate here. That rate amounts to $267.462 for work done in February, $275.688 for June, and $276.188 for July and August. Doc. No. 15-1 at 23. With rates settled, the Court turns to the amount of time Ngah's counsel claims to have spent working on his case.

B. Number of Hours

When determining a fee award, a court "must calculate the number of hours reasonably expended by the attorneys for the prevailing party, excluding those hours that are excessive, redundant, or otherwise unnecessary." Pérez-Sosa v. Garland, 22 F.4th 312, 321 (1st Cir. 2022) (citation modified). In making such calculations, a court's "task . . . is to do rough justice, not to achieve auditing perfection." Id. at 322 (citation modified). The court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." Id. (citation modified). Here, these considerations lead the Court to reduce the hours claimed by Ngah's counsel.

The hours described in Ngah's submissions are excessive considering the nature of the tasks and filings produced. Two law students collectively spent more than fourteen hours preparing a twelve-page habeas petition, which Ardalan then spent two more hours reviewing. Doc. No. 13-1 at 43, 45. The petition itself was not the first filed by Ardalan in this District, and sections of it are copied nearly verbatim (with name changes) from at least one earlier-filed petition prepared and submitted by her clinic. Compare Doc. No. 1 ¶¶ 11–13, 15–26, 42–45, Prayer for Relief, with Pet'n ¶¶ 11–13, 15–26, 42–45, Prayer for Relief, Paredes Quiroz v. Moniz, No. 25-cv-13393 (D. Mass. Nov. 13, 2025), ECF No. 1.

Similar observations apply to the EAJA-related submissions (on which Ardalan and those assisting her spent more time than they did on the petition itself). Those filings consumed more than fifteen additional hours of work by Ardalan, twelve hours of paralegal time, and six hours of law-student work. Doc. No. 15-1 at 39, 41. But significant chunks of these motion papers and several of their exhibits mirror submissions made by Ardalan in the same previous habeas action. Compare Doc. Nos. 13, 13-1, 15, 15-1, with Paredes Quiroz, No. 25-cv-13393, ECF Nos. 13, 13-1, 13-2, 23, 23-1. Reliance on research and arguments drafted in a similar context is both reasonable and efficient. Doing so does not eliminate the need to review, refine, and revise the prior work as appropriate. But nothing before the Court in this case explains why that process (e.g., taking the eighteen-page fee motion filed in Paredes Quiroz and using it to produce the in-large-part-identical eighteen-page fee motion filed here) reasonably required the number of hours claimed by Ngah.

In light of the foregoing, the Court finds that an across-the-board halving of the number of hours claimed is appropriate. Thus, it awards Ngah fees as follows:

| Representative(s) | Hours | Rate | Total |
|---|---|---|---|
| Attorney Ardalan | 1.5 (Feb.) | $267.462 | *$401.19* |
| | 2.5 (June) | $275.688 | *$689.22* |
| | 5.25 (July, Aug.) | $276.188 | *$1,449.99* |
| | | | $2,540.40 |
| Paralegal | 6 | $150 | $900.00 |
| Law Students | 12.75 | $75 | $956.25 |
| | | | **$4,396.65** |

To that sum, the Court adds the $149.97 in expenses incurred so that Ngah could meet with his lawyers—a facially reasonable expense to which the respondents object only in cursory fashion in a footnote to their memorandum. See Doc. No. 14 at 4 n.3.

## IV. CONCLUSION AND ORDER

For the reasons explained above, Ngah's motion seeking an award of EAJA fees (Doc. No. 13) is ALLOWED IN PART. By October 9, 2026, the respondents shall pay to Ngah's counsel fees and costs in the amount of $4,546.62. The respondents shall file a status report confirming compliance with this Order by the earlier of October 14, 2026, or within three days of making the required payment.

SO ORDERED.

/s/ Leo T. Sorokin
United States District Judge